**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION**

AVIA THOMPSON,

     Plaintiff,                                     CASE NO.:

v.                                          *Plaintiff Demands a
Trial by Jury*

THE HOUSING AUTHORITY OF THE CITY OF
NORTH LAUDERDALE, FLORIDA, INC., and HOUSING
AUTHORITY OF FORT LAUDERDALE

     Defendant,

_____

## COMPLAINT AND DEMAND FOR TRIAL BY JURY

Plaintiff, AVIA THOMPSON (hereinafter referred to as "**Plaintiff**" and/or "**Thompson**"), by and through her counsel, Derek Smith Law Group, PLLC, hereby complains of Defendant THE HOUSING AUTHORITY OF THE CITY OF NORTH LAUDERDALE, FLORIDA, INC., and HOUSNG AUTHORITY OF FORT LAUDERDALE (hereinafter referred to as "**Defendants**" and/or "**HACNL**" and/or **HAFT**), and alleges as follows:

## INTRODUCTION

1.     This employment discrimination case is about an employer who subjected its black, African American employee, to relentless harassment and discrimination.

2.     Plaintiff, Avia Thompson, brings this action pursuant to 42 U.S.C. § 1981 ("**1981**" and/or "**Section 1981**")

3.     Ms. Thompson seeks monetary relief to redress the Defendant's unlawful employment practices in violation of Section 1981.  Additionally, this action seeks to redress

Defendant's deprivation of Ms. Thompson's personal dignity and her civil right to pursue equal employment opportunities.

4.      At bottom, the Defendant is liable for subjecting Ms. Thompson to a work environment rife with relentless race discrimination.

## PARTIES

5.      At all material times, the Plaintiff, AVIA THOMPSON, was/is a black, African American employee. Ms. Thompson is a resident of the State of Florida, in Broward County.

6.      At all times material, the Defendant, THE HOUSING AUTHORITY OF THE CITY OF NORTH LAUDERDALE, FLORIDA, INC., was/is a governmental body existing by the virtues and laws of the State of Florida.

7.      At all times material, the Defendant, HOUSING AUTHORITY OF FORT LAUDERDALE, was/is a governmental body existing by the virtues and laws of the State of Florida.

8.      At all times material to this action, Ms. Thompson was employed by the Defendant, HACNL.

9.      At all times material to this action, Ms. Thompson was employed by the Defendant, HAFT.

## JURISDICTION AND VENUE

10.      This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1367.  This action is authorized and instituted pursuant to 42 U.S.C. § 1981.

11.      Venue is proper in this Court under 28 U.S.C. §1391 because the unlawful employment practices alleged below were committed within the jurisdiction of the United States District Court for the Southern District of Florida.  The Defendant HACNL is located in this

judicial district and a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this district.

<u>**STATEMENT OF MATERIAL FACTS**</u>

12.     On or about February 5, 2018, Defendant HACFL hired Ms. Thompson to work as a Community Manager.

13.     At all times relevant to this action, Ms. Thompson supervised ELLEN DANDROW (hereinafter referred to as "**DANDROW**"), a white, Caucasian woman over the age of 50, who held the position of Assistant Community Manager.

14.     At all times relevant to this action, the Defendant's staff consisted of majority non-white employees. Dandrow was one of the Defendant's few white employees.

15.     Dandrow exhibited a pattern of discriminatory conduct towards non-white staff and tenants at HACFL.

16.     By way of example, Dandrow described African American tenants as "**DIRTY**" and would always wear gloves when she was required to interact with African Americans.

17.     Ms. Thompson frequently reprimanded Dandrow for her disrespectful and discriminatory conduct towards tenants and staff.

18.     On one occasion, Ms. Thompson told Dandrow "YOU CANNOT TALK TO PEOPLE LIKE THAT, THERE IS NO EXCUSE FOR IT."

19.     In response to Ms. Thompson's reprimands, Dandrow became insubordinate and lashed out against Ms. Thompson.

20.     Following this incident, Ms. Thompson reported Dandrow's conduct to her direct supervisor DOUGLAS OWENS (hereinafter referred to as "**OWENS**"), Defendant's Chief

Operating Officer. At all times relevant to this action, Owens held direct supervisory authority over Ms. Thompson, controlling the various terms and conditions of employment.

21.     Shortly thereafter, TRINA GRADY (hereinafter referred to as "**GRADY**"), responded to Ms. Thompson's complaint concering Dandrow's discriminatory conduct and advised Ms. Thompson that she would be arriving on-site to speak with both Ms. Thompson and Dandrow about the incident.

22.     When Grady arrived on-site, she held a private conversation with Dandrow.

23.     Rather than taking any corrective action in regard to the discriminatory conduct, Grady returned to speak with Ms. Thompson and informed Ms. Thompson that Dandrow's actions had been justified. Ms. Thompson vehemently disagreed with Grady's conclusions concering Dandrow's conduct.

24.     Despite the Defendant's failure to take action, Ms. Thompson continued to report Dandrow's discriminatory conduct. In fact, between January 31, 2019, and May 8, 2019, Ms. Thompson reported eight (8) specific instances where Dandrow made innapropriate comments towards African Americans.

25.     The Defendant's representatives typically responded to Ms. Thompson's complaints by blaming Ms. Thompson for the incidents and suggesting that Ms. Thompson was being "**INHUMANE**" for not tolerating the discriminatory conduct.

26.     On one particular occasion, Ms. Thompson heard Dandrow mocking an African American tenant by asking "**CAN YOU READ AND WRITE? WHY DO YOU NEED A NEWSLETTER? YOU CAN'T READ**." Ms. Thompson was shocked and appalled when she heard Dandrow's remarks.

27.     On or around May 9, 2019, Ms. Thompson reported Dandrow's comments towards the tenant. Rather than discipline Dandrow, Defendant's representatives disciplined Ms. Thompson and issued her a written warning.

28.     Shortly thereafter, Defendant's representatives informed Ms. Thompson that Dandrow would be moved to another assignment for "**DAMAGE CONTROL**" purposes.

29.     The Defendant's representatives informed Ms. Thompson that they did not want to face a "**REVERSE DISCRIMINATION**" suit because Dandrow was white and over the age of 50.

30.     The Defendant's representatives, including Grady, began to retaliate against Ms. Thompson even further.

31.     On or around May 14, 2019, Ms. Thompson received a demotion for her complaints. Ms. Thompson was demoted to Assistant Manager.

32.     In addition to the demotion, Ms. Thompson also received a pay cut, lowering her salary from $52,000 per year, to just $31,500 per year.

33.     On or around May 14, 2019, Ms. Thompson was also placed on a Corrective Action Plan.

34.     Instead of taking action to stop and prevent further discrimination, the Defendant chose to retaliate against Ms. Thompson for her reports by demoting her, reducing her pay, and changing her current department assignment.

35.     On or around September 16, 2019, Ms. Thompson was unlawfully terminated by the Defendant under the pretext of "failure to make improvements," as per her Corrective Action Plan.

36.     The aforementioned allegations are just some of the examples of the discrimination that Ms. Thompson suffered at the hands of the Defendant and are not an exhaustive list of Ms. Thompson's experiences of discrimination and harassment while employed with Defendant.

37.     Ms. Thompson believes she has been discriminated against in violation of 42 U.S.C. § 1981.

38.     Additionally, Ms. Thompson further claims a continuous practice of discrimination and continuing violations and makes all claims herein under the continuing violations doctrine. The Defendant has exhibited a pattern and practice of unlawful discriminatory conduct.

39.     As a result of the Defendant's conduct and actions, Ms. Thompson has suffered and will continue to suffer loss of income, loss of salary, bonuses, benefits, and other compensation which such employment entails.  Ms. Thompson has also suffered future pecuniary losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

40.     Further, as a result of the Defendant's unlawful employment practices, Ms. Thompson felt extremely humiliated, degraded, victimized, embarrassed and has suffered severe emotional and physical distress. The Defendant's conduct has also caused Ms. Thompson to suffer from severe anxiety, including frequent panic attacks.

41.     As Defendant's conduct has been malicious, willful, extreme, and outrageous, and with full knowledge of the law, Ms. Thompson seeks punitive damages, jointly and/or severally against the Defendant.  Ms. Thompson has presented factual allegations that would permit any reasonable jury to award damages.

42.     At bottom, the Defendant is liable for their reckless disregard for Ms. Thompson's personal dignity and her civil right to pursue equal employment opportunity.

43.    Ms. Thompson has suffered damages as a result of the Defendant's unlawful employment practices.

**COUNT ONE**
***Race Discrimination (Discrete Act)***
***in Violation of* § 1981**

44.    The Plaintiff reincorporates the allegations in the previous paragraphs 11-41.

45.    This is an action for discrimination and harassment because of the Plaintiff's race in violation of Section 1981. 42 U.S.C. §1981 states in relevant part as follows:

(a) Statement of equal rights All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

(b) "Make and enforce contracts" defined For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship. 42 U.S.C. §1981.

46.    The Plaintiff, as a member of the African American race, was discriminated against by the Defendant because of her race, as provided under 42 U.S.C. §1981 and has suffered damages as set forth herein.

47.    The Defendant constantly enforced a purposefully discriminatory pattern and practice of denying African American employees of the equal rights described therein, in further violation of 42 U.S.C. §1981.

48.    The Plaintiff is an African American woman and is protected under Section 1981.

49.     At all times relevant, the Plaintiff was treated differently because of her race.

50.     As a result of the Defendant's discrimination in violation of Section 1981, the Plaintiff has been denied the enjoyment of all benefits, privileges, terms, and conditions of the Plaintiff's contractual relationship, which provided substantial compensation and benefits, thereby entitling her to injunctive and equitable monetary relief; and having suffered such anguish, humiliation, distress, inconvenience and loss of enjoyment of life because of the Defendant's actions, thereby entitling the Plaintiff to compensatory damages.

51.     As alleged above, the Defendant acted with malice or reckless indifference to the rights of the Plaintiff, thereby entitling the Plaintiff to an award of punitive damages.

52.     The Plaintiff makes a claim against the Defendant under all of the applicable paragraphs of 42 U.S.C. §1981.

53.     The Plaintiff claims the Defendant unlawfully discriminated against the Plaintiff in violation of 42 U.S.C. §1981.

**COUNT TWO**
***Race Discrimination (Hostile Work Environment)***
***in Violation of § 1981***

54.     The Plaintiff reincorporates the allegations in the previous paragraphs 11-41.

55.     This is an action for discrimination and harassment because of the Plaintiff's race in violation of Section 1981. 42 U.S.C. §1981 states in relevant part as follows:

> (a) Statement of equal rights All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like

punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other. (b) "Make and enforce contracts" defined For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship. 42 U.S.C. §1981.

56.     Here, the Defendant's conduct occurred because of the Plaintiff's legally protected characteristic; and was severe or pervasive enough to make a reasonable person of the same legally protected class believe that the conditions of employment were altered, and that the working environment was intimidating, hostile or abusive.

57.     The harassing conduct was directly connected to the Plaintiff's race.

58.     The Defendant's employees regularly harassed the Plaintiff because of her race and her complaints of discrimination.

59.     The Defendant's employees regularly made discriminatory comments about the Plaintiff on account of her race.

60.     The Defendant's discriminatory conduct was not welcomed by the Plaintiff.

61.     As a result of the hostile work environment, the Plaintiff suffered a "tangible employment action" defined as a significant change in employment status, failure to promote, reassignment with significantly different responsibilities, and/or a decision causing a significant change in benefits.

62.     The Defendant failed to exercise reasonable care to prevent racial harassment in the workplace by failing to establish an explicit policy against harassment in the workplace on the basis of race, failing to fully communicate the policy to its employees, and/ or failing to provide a

reasonable way for the Plaintiff to make a claim of harassment to higher management, and failing to take reasonable steps to promptly correct the harassing behavior raised by the Plaintiff.

63.     As a result of the Defendant's violations of § 1981, the Plaintiff has suffered damages, including, but not limited to: past and future lost wages, mental pain and suffering; humiliation; emotional distress; diminishment of career opportunities; harm to business reputation; loss of self-esteem; disruption to her family life; and other harm, pain and suffering, both tangible and intangible.

**COUNT THREE**
*Cause of Action for Retaliation*
*in Violation of § 1981*
*(As to All Defendants)*

64.     The Plaintiff reincorporates the allegations in the previous paragraphs 11-41.

65.     This is an action for retaliation by Defendant against Plaintiff in violation of Section 1981.

66.     The Defendant discriminated against and subjected the Plaintiff to hostile work environment because of her race.

67.     The Plaintiff complained about the discriminatory treatment she received based on her race.

68.     Between January 31, 2019, and May 8, 2019, the Plaintiff made at least eight (8) reports of discriminatory conduct by Defendant's employees.

69.     As a result of her complaints, the Plaintiff was demoted, received a pay cut, and was placed on a Corrective Action Plan by the Defendant.

70.     The retaliatory actions taken against the Plaintiff would deter a reasonable person from making or maintaining a complaint of discrimination and/or harassment against the Defendant.

71.     The Plaintiff has been damaged as a direct and proximate result of the Defendant's illegal employment practices, including suffering economic damages, compensatory damages, emotional pain and suffering, inconvenience, mental anguish, outrage, loss of enjoyment of life, loss of dignity, and other non-pecuniary losses and tangible injuries.

## DEMAND FOR JURY TRIAL

The Plaintiff requests a jury trial on all issues to be tried.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiff respectfully requests this Court enter judgment against the Defendant for all damages suffered by the Plaintiff, including economic damages, lost wages (back pay and front pay) and benefits, liquidated damages, statutory damages, compensatory damages, emotional distress damages, punitive damages, interest, attorney's fees and costs, disbursements of action, and any other remedies (monetary and/or equitable) allowable by law as a result of the Defendant's conduct in violation 42 U.S.C. §1981.

Dated:  Miami, Florida  
      October 6, 2021

**DEREK SMITH LAW GROUP, PLLC**  
*Counsel for Plaintiff*

By: /s/ Tiffani-Ruth I. Brooks, Esq.  
Tiffani-Ruth I. Brooks, Esq.  
Derek Smith Law Group, PLLC  
701 Brickell Ave, Suite 1310  
Miami, FL 33131  
Tel: (305) 946-1884  
Fax: (305) 503-6741  
Tiffani@dereksmithlaw.com